UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MATTHEW WRIGHT,<br><br>    Plaintiff,<br><br>  v.<br><br>NORTH AMERICAN TERRAZO, et al.,<br><br>    Defendants. | CASE NO. C12-2065JLR<br><br>ORDER ON MOTION TO DISMISS AND ORDER TO SHOW CAUSE |

  This matter comes before the court on Defendants International Bricklayers and Allied Craftworkers Union, Local 1 of Washington ("the Union"), Dennis Becker, and Steve Honick's motion to dismiss (Mot. (Dkt. # 9)) Plaintiff Matthew Wright's complaint (Comp. (Dkt. # 3).) Having considered the submissions of the parties and the relevant law, the court GRANTS the motion to dismiss as explained herein and ORDERS Mr. Wright to SHOW CAUSE as to why the court should not include Mr. Honick as a party to this motion.

ORDER- 1

# I. BACKGROUND

Mr. Wright alleges racial discrimination against the Union, Mr. Becker, and Mr. Honick, as well as against nonmovant Defendants North American Terrazzo[1] ("NAT"), Randy Rubenstein, Joe Geiger, Paul Singh, Shawn Navoa, and John and Jane Does 1-25. (*See generally* Comp. (Dkt. # 3-1).) Mr. Wright alleges that he was "the victim of unlawful discriminatory policies and practices which were carried out by all the named defendants on the basis of the plaintiff's race, Caucasian American." (*Id.* at ¶ 1.) Mr. Wright alleges that the discrimination "occurred while he was employed at NAT and was represented by the Union." (*Id.*) He also alleges that he was an employee of NAT and the Union. (*Id.* at ¶ 7.)

Mr. Wright provides four examples of discriminatory conduct against him. First, Mr. Wright alleges that Defendants retaliated against him for asserting his civil rights and subsequently cut his hours, demoted him, and began a concerted effort to terminate his employment. (*Id.* at ¶¶ 3a, d.) Second, he alleges that Defendants called him "white boy" and stated that they were going to get rid of all the "white motherfuckers" and make the site a minority run site. (*Id.* at ¶ 3b.) He also alleges that the Defendants did in fact get rid of other Caucasian workers because of their race. (*Id.*) Third, Mr. Wright alleges that NAT, the Union, and its staff failed to take steps to combat racial discrimination in the workplace, and that they knew or should have known about the racial discrimination

---

[1] Although Mr. Wright spells Defendant North American Terrazzo as "Terrazo" throughout his filings, North American Terrazzo's attorney explained in his notice of appearance that the correct spelling is "Terrazzo." (Not. of Appearance (Dkt. # 6) at 1.)

allegedly occurring there. (*Id.* at ¶ 3c.) Further, he alleges that they "failed to segregate" him and other Caucasian American employees from Mr. Navoa and Mr. Geiger. (*Id.*) Fourth, Mr. Wright alleges that NAT and its representatives did not act when he and other employees were forced to work without compensation. (*Id.* at ¶ 3e.) This allegation is not asserted against the Union and its representatives.

The Union, Mr. Becker, and Mr. Honick move to dismiss Mr. Wright's claims for *respondeat superior*, wrongful termination, bad faith, negligence, negligent supervision, negligent infliction of emotional distress, breach of contract, violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, outrage, and discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, the Railway Labor Act of 1935, 45 U.S.C. § 151, *et seq.*, and the Washington Law Against Discrimination ("WLAD"), RCW 49.60, *et seq.* (*See generally* Mot.; *see also* Comp. ¶¶ 12-49.)

## II.     ANALYSIS

**A.     Mr. Wright's Withdrawn Claims**

As an initial matter, it is undisputed that Mr. Wright withdrew his claims for discrimination under The Railway Labor Act of 1935, discrimination under Title VII, wrongful termination under Title VII, and bad faith. (Resp. at 9.) As a result, those claims are no longer at issue.

Furthermore, because Mr. Wright's Title I claim depends on his withdrawn Title VII claim, the court dismisses Mr. Wright's Title I claim. Title I creates a monetary

ORDER- 3

remedy for violations of Title VII, but does not provide a substantive right or cause of action on its own. *See Huckaby v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998); *see also Daniels v. Donahoe*, No. 11-00287 SOM-BMK, 2012 WL 4739460, at *4-5 (D. Haw. Oct. 2, 2012); *Pimentel v. Orloff*, No. C-08-0249 MMC, 2008 WL 3876173, at *2 (N.D. Cal. Aug. 19, 2008). Because Title I does not provide an independent cause of action, the court dismisses the claim with prejudice for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

In addition, Mr. Wright withdrew his claim for vicarious liability under the doctrine of *respondeat superior*, although he wishes to retain *respondeat superior* as a doctrine of liability in this case. (Resp. at 9.) Accordingly, the claim for *respondeat superior* is no longer at issue. Furthermore, the court agrees with Defendants that *respondeat superior* is a means to impose vicarious liability on an employer for the acts of an employee, not a standalone cause of action. *See, e.g.*, Restatement (Third) of Agency § 2.04.

**B.     Standard for Dismissal under Rule 12(b)(6)**

The court now turns to the contested claims. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The purpose of this rule is to "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it is not enough that a claim for relief be merely "possible" or "conceivable;" instead, it

must be "plausible on its face." *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim for relief is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To cross the line from conceivable to plausible, a complaint must contain a sufficient quantum of "factual matter" alleged with a sufficient level of specificity to raise entitlement to relief above the speculative level. *Twombly*, 550 U.S. at 555. The court is not bound to accept as true labels, conclusions, formulaic recitations of the elements, or legal conclusions couched as factual allegations. *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint must do more than tender "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**C.    FLSA**

Mr. Wright brings a claim for a violation of the FLSA, 29 U.S.C. § 207, stating that the Union and NAT "unreasonably den[ied] overtime pay." (Comp. at ¶¶ 46-49.) The Union argues that Mr. Wright "has failed to plead facts sufficient to support a violation under any of the statutes referenced in the Complaint." (Mot. at 18.) For Mr. Wright's pleading to be sufficient under Federal Rule of Civil Procedure 8(a), he must indicate facts supporting the following: (1) the Union was Mr. Wright's employer; (2) Mr. Wright worked more than forty hours in a week; and (3) Mr. Wright did not receive compensation for his employment in excess of the forty hours. *See Acho v. Cort*, No.

C 09-00157 MHP, 2009 WL 3562472, at *2 (N.D. Cal. Oct. 27, 2009). Mr. Wright fails to sufficiently allege the elements: His complaint contains only the allegation that the Union "unreasonably den[ied] overtime pay." (Comp. ¶ 48.) The court finds that this conclusory statement does not allege the sufficient quantum of "factual matter" required by *Twombly*. *Twombly*, 550 U.S. at 555; *see, e.g.*, *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007) ("[T]he complaint should, at least approximately, allege the hours worked for which [overtime] wages were not received."); *Beaulieu v. Vermont*, No. 2:10-CV-00032, 2010 WL 3632460, at *5 (D. Vt. Aug. 5, 2010) ("The critical component of a complaint alleging violations of Section 207 [of the FLSA] is an approximation of the number of unpaid weekly overtime hours worked over the employment period."); *Villegas v. J.P Morgan Chase & Co.*, No. C 09-00261 SBA, 2009 WL 605833, at *5 (N.D. Cal. Mar. 9, 2009) (plaintiff's factual statement that she did not receive properly computed overtime wages was insufficient to state a claim under the FLSA); *Harding v. Time Warner, Inc.*, No. 09CV1212-WQH-WMC, 2009 WL 2575898, at *3 (S.D. Cal. Aug. 18, 2009) (allegations that the employer willfully failed to "pay and properly calculate overtime," "keep accurate records of all hours worked by its employees," and "provide all wages in a compliant manner" were "conclusory allegations as defined by *Twombly*" and would be assigned "no weight"). Although "[i]t cannot be the case that a plaintiff must plead specific instances of unpaid overtime," Mr. Wright still must plead more than the naked assertion devoid of factual content that the Union "unreasonably denied overtime pay." *See Acho*, 2009 WL 3562472 at *3; *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). For these reasons, the court grants

ORDER- 6

the motion and dismisses Mr. Wright's claim for a violation of the FLSA, but with leave to amend.

**D.  Outrage**

Mr. Wright brings a claim for outrage. (Comp. ¶¶ 15-18.) The Union argues that Mr. Wright has failed to state a claim upon which relief can be granted. (Mot. at 11.) The elements for a claim of outrage are: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." *Rice v. Janovich*, 742 P.2d 1230, 1238 (Wash. 1987).

With respect to extreme and outrageous conduct, Mr. Wright alleges generally that "the defendants intentionally engaged in extreme and outrageous conduct that would shock the conscience of a civilized society" and that "the plaintiff was the object of the extreme and outrageous conduct." (Comp. ¶¶ 16, 18.) The complaint incorporates by reference and re-alleges each earlier stated allegation. (Comp. ¶ 15.) The most outrageous of the allegations before the court is that the Defendants "[r]epeatedly called the plaintiff 'white boy' and stated that they were going to get rid of all the 'white motherfuckers' and make the site a minority run site only." (Comp. ¶ 3b.) It is unclear from the complaint precisely which defendants are alleged to have participated in this conduct. *See id.*

Courts have a very high threshold for what constitutes outrageous conduct. *See Grimsby v. Samson*, 530 P.2d 291, 296 (Wash. 1975) (noting that outrageous conduct is that which is "so extreme in degree, as to go beyond all possible bounds of decency"). For example, in *Strong v. Terrell*, a supervisor verbally abused the plaintiff on a daily

basis by screaming at her, sarcastically criticizing her work, telling "blonde jokes," and ridiculing her with remarks about her personal life, including disparaging the house she purchased, her husband's employment, and telling her that her son was going to find out that she was a "bum" mother because she had placed him in therapy. *Strong v. Terrell*, 195 P.3d 977, 979-80 (Wash. Ct. App. 2008). Even in light of such egregious behavior, the Washington Court of Appeals held *as a matter of law* that the supervisor's conduct was not outrageous. *Id.* at 385.

The court concludes that the alleged statements, as well as all other conduct alleged by Mr. Wright, do not reach the high bar set for outrageous conduct by Washington courts. Simply put, the alleged facts presented in this matter are no worse than those alleged in *Strong*. Thus, Mr. Wright's claim for outrage is dismissed, but with leave to amend.

**E.     Preemption under the Duty of Fair Representation**

The Union, Mr. Becker, and Mr. Honick argue that many of Mr. Wright's claims are preempted by the duty of fair representation. (Mot. at 8-17.) The duty of fair representation is implied under the scheme of the National Labor Relations Act and "imposed on labor organizations because of their status as the exclusive bargaining representative for all of the employees in a given bargaining unit." *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985); *see also Abrams v. Carrier Corp.*, 434 F.2d 1234, 1251 (2nd Cir. 1970) (noting that the duty of fair representation "is a federal obligation which has been judicially fashioned from national labor statutes"). That is, the duty of fair representation is derived from a union's statutory right to be the exclusive

representative of the members of a designated unit, from which the Supreme Court found an implied statutory obligation to give members equal and fair representation. *See Abrams*, 434 F.2d at 1251 (citing *Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953)). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).

The duty of fair representation preempts state law claims that fall under its umbrella. *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008) ("The federal statutory duty which unions owe their members to represent them also displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative."). To successfully bring an unpreempted state law claim against a union, a union member "must make a showing of additional duties, if they exist, beyond the normal incidents of the union-employee relationship." *Id.* at 539. Such duties must stem not from the union's general duty of fair representation, but from some other source, such as an express provision of a contract. *Id.* at 539-40.

**1. Negligence, Negligent Supervision, and Negligent Infliction of Emotional Distress**

Mr. Wright brings claims for negligence, negligent supervision, and negligent infliction of emotional distress. (Comp. ¶¶ 19-24, 28-32.) The Union argues that these claims are preempted by the duty of fair representation. (Mot. at 12-13.) Mr. Wright alleges that the Union "owed a professional and reasonable duty of care to the plaintiff," and "willfully den[ied] the plaintiff equal terms and conditions of his employment."

ORDER- 9

(Comp. ¶ 23.) The negligence, negligent supervision, and negligent infliction of emotional distress claims are preempted by the duty of fair representation because Mr. Wright's allegations go directly to the Union's obligation to give members fair and equal representation. *See Abrams*, 434 F.2d at 1251 (citing *Ford*, 345 U.S. 330); *see also Adkins*, 526 F.3d at 540 (finding duty of fair representation preemption for a variety of state law claims brought against a union). Because these state law claims seek to enforce the same duties that the Union owes Mr. Wright by virtue of its duty to fairly represent him, the court grants the motion and dismisses Mr. Wright's claims against the Union for negligence, negligent supervision, and negligent infliction of emotional distress with prejudice.

Alternatively, Mr. Wright's claim for negligent infliction of emotional distress also fails under the *Twombly/Iqbal* pleading standard. *See Twombly*, 550 U.S. at 562-63; *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Under Washington law, in addition to the classic elements of duty, breach, proximate cause, and injury, a claim for negligent infliction of emotional distress also requires that "a plaintiff's emotional response must be reasonable under the circumstances, and be corroborated by objective symptomology." *Hegel v. McMahon*, 960 P.2d 424, 430 (Wash. 1998). "[P]laintiff must show an 'emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally diagnosed by professionals trained to do so.'" *Id*. (citing *Sorrells v. M.Y.B. Hospitality Ventures of Asheville,* 435 S.E.2d 320, 322 (N.C. 1993) (quoting *Johnson v. Ruark Obstetrics & Gynecology*

*Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990)). Mr. Wright asserts that he "suffered severe emotional distress, inconvenience, pain and suffering, humiliation, anxiety, loss of enjoyment of life, [and] loss of self respect," but offers no medical diagnosis or objective symptomology. (Comp. ¶ 31.) For purposes of a motion to dismiss, "such threadbare recitals of a cause of action" will not suffice. *Iqbal*, 556 U.S. at 678. As a result, the court finds that Mr. Wright's claim for negligent infliction of emotional distress is insufficiently pled, providing another ground for its dismissal.

### 2. Breach of Contract

Mr. Wright brings a claim for breach of contract. (Comp. ¶¶ 42-55.) The Union argues that this claim is preempted by the duty of fair representation. (Mot. at 16.) Mr. Wright alleges that "there was a valid employment contract between the plaintiff and the defendants, Union and NAT," and that "Union and NAT breached their contract by unreasonably denying overtime pay which had been owed to the plaintiff. (Comp. ¶¶ 43-44.) But Mr. Wright does not allege, for example, "an express provision of the CBA or a collateral contract that imposed additional enforceable duties upon the Union." *Adkins*, 526 F.3d at 540 (preempting plaintiff's breach of contract claim). As a result, this claim seeks to enforce duties that Mr. Wright alleges are owed to him as a result of the Union's status as his union representative. Accordingly, Mr. Wright's claim against the Union for breach of contract is preempted by the duty of fair representation, and the court grants the motion and dismisses Mr. Wright's claim with prejudice.

//

//

1        **3.    WLAD**

2        Mr. Wright brings a claim for discrimination on the basis of race under the
3 WLAD, RCW 49.60, *et seq.* (Comp. ¶¶ 12-14.) WLAD, *inter alia*, guarantees workers
4 "[t]he right to obtain and hold employment without discrimination." RCW 49.60.030.
5 Further, it makes it illegal for a union to "discriminate against any . . . person to whom a
6 duty of representation is owed because of . . . race." RCW 49.60.190(3). The substance
7 of Mr. Wright's WLAD claim is that the Union discriminated against him, an action that
8 falls under the duty of fair representation. *See Vaca*, 386 U.S. at 190 ("A breach of the
9 statutory duty of fair representation occurs only when a union's conduct toward a
10 member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith").
11 The fact that the duty under WLAD is statutory, rather than common law, is irrelevant.
12 *See, e.g.*, *Snay v. U.S. Postal Service*, 31 F. Supp. 2d 92, 99-100 (N.D.N.Y. 1998) (duty
13 of fair representation preempts claim under New York's "Human Rights Law"); *Pitts v.*
14 *Plumbers & Steamfitters Local Union No. 33*, 718 F. Supp. 2d 1010, 1018-19 (S.D. Iowa
15 2010) (duty of fair representation preempts claim under Iowa Civil Rights Act); *Bergeron*
16 *v. Henderson*, 52 F. Supp. 2d 149, 153-55 (D. Me. 1999) (duty of fair representation
17 preempts claim under Maine Civil Rights Act). As such, Mr. Wright's claim for racial
18 discrimination under WLAD is preempted by the duty of fair representation, and the
19 court grants the motion and dismisses Mr. Wright's claim with prejudice.
20 //
21 //
22 //

### F. Wrongful Termination

Mr. Wright brings a claim for wrongful termination in which he alleges that:

> 34.) As a result of the unlawful discriminatory acts and practices of the defendants, the plaintiff was wrongfully terminated from his employment with the defendants' [sic] Union and NAT in violation of state and federal anti-discrimination statutes.
>
> 35.) The plaintiff also had an implied employment contract with the defendants, and an implied covenant of good faith and fair dealing with the defendants.
>
> 36.) The defendants Union and NAT unlawfully breached their employment contract with the plaintiff, and as a direct and proximate result of the defendants' breach, the plaintiff suffered damages to his economic interests, person and property.

(Comp. ¶¶ 34-36.)

Mr. Wright's wrongful termination cause of action alleges four discrete claims: violation of state anti-discrimination statutes, violation of federal anti-discrimination statutes, breach of contract, and breach of the implied covenant of good faith and fair dealing. The court addresses each individually.

First, as discussed above, Mr. Wright's claim for wrongful termination under Washington statutory law is preempted by the duty of fair representation, and is dismissed with prejudice. *See Snay*, 31 F. Supp. 2d at 99-100. Second, Mr. Wright withdrew his claim under Title VII, and so the claim for wrongful termination under federal statutory law is no longer at issue. (Resp. at 9.) Third, Washington does not recognize an implied covenant of good faith and fair dealing in the employment contract context, although some other states do. *See Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1086 (Wash. 1984) ("[T]o imply into each employment contract a duty to terminate

ORDER- 13

1  in good faith would . . . subject each discharge to judicial incursions into the amorphous
2  concept of bad faith"). As such, Mr. Wright fails to state a claim for which relief can be
3  granted. *See* Fed. R. Civ. P. 12(b)(6). Because no cause of action exists in Washington
4  for breach of an implied covenant of good faith and fair dealing in an employment
5  contract, the claim is dismissed with prejudice. Fourth, Mr. Wright's claim for breach of
6  contract is preempted by the duty of fair representation, and is dismissed with prejudice.
7  *See Adkins*, 526 F.3d at 540. The court thus grants the motion and dismisses Mr.
8  Wright's entire wrongful termination cause of action with prejudice.

**G.     Individual Defendant Liability under the Duty of Fair Representation**

Claims that are rightfully characterized as breaches of the duty of fair representation do not extend liability to individual union defendants. *See Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1400 (9th Cir. 1985) ("The language of section 301(b) [of the Labor Management Relations (Taft-Hartley) Act] and the Supreme Court's decision in *Atkinson* also provide a shield for individual union members in suits for breach of the duty of fair representation."); *see also Coleman v. S. Wine & Spirits of Cal., Inc.*, No. 11-00501 SC, 2011 WL 5520983, at *4 (N.D. Cal. Nov. 14, 2011) ("[A] number of cases have held that individual officers, employees, and members of a union cannot be held liable for breaches of fair representation committed by their union.") (citing *Peterson v. Kennedy*, 771 F.2d 1244, 1257 (9th Cir. 1985)).

Mr. Becker is a representative of the union.[2]  (Mot. at 22.)  Because the court characterizes Mr. Wright's claims for negligence, negligent supervision, negligent infliction of emotional distress, breach of contract, discrimination under WLAD, and wrongful termination as duty of fair representation claims, Mr. Becker is not liable as an individual for those claims.  Accordingly, the court grants the motion as to those claims against Mr. Becker and dismisses them with prejudice.

The court notes that although counsel for the Union and Mr. Becker filed a notice of appearance on Mr. Honick's behalf (Not. of Appearance (Dkt. # 7) at 2) and included him as a party to this motion, counsel simultaneously disclaims any knowledge of who Mr. Honick is and whether he is affiliated with the Union.  (Mot. at 4 n.1.)  Mr. Honick's status in this litigation is thus unclear to the court.  Therefore, the court ORDERS Mr. Wright to SHOW CAUSE within 10 days of the date of this order why the court should not include Mr. Honick as a party to this motion.  Defendants may, but are not required to, also file a response to the court's order to show cause on this issue.  Any submission filed in response to this order to show cause shall not be longer than five pages.  If Mr. Wright fails to show cause as to why Mr. Honick should not be included as a party to this motion, the court will dismiss all claims against Mr. Honick in the same manner as the claims against Mr. Becker.

//

---

[2] For the reasons discussed *infra*, the court's disposition as to Mr. Wright's claims against Mr. Honick depends on Mr. Wright's ability to show cause as to why the court should not include Mr. Honick as a party to this motion.

ORDER- 15

### H. Leave to Amend

The court recognizes that it may be possible for Mr. Wright to cure the defects of his claims for a violation of the FLSA and for outrage if provided the opportunity to amend. When dismissing a complaint for failure to state a claim, district courts should liberally grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Service Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). Accordingly, those claims are dismissed as against all defendants, but with leave to amend. The court grants leave for Mr. Wright to file an amended complaint within 20 days of the date of this order. Failure to do so within the time limit set by the court will result in dismissal of this action with prejudice. Mr. Wright is advised that the amended complaint must plainly and clearly state how each named defendant has injured him, and it must allege facts specific to Mr. Wright's claims as opposed to mere legal conclusions.

### III. CONCLUSION

Based on the foregoing, the court GRANTS the motion to dismiss (Dkt. # 9) and DISMISSES WITH PREJUDICE Mr. Wright's claims against the Union and Mr. Becker for negligence, negligent supervision, negligent infliction of emotional distress, breach of contract, discrimination under Title I of the Civil Rights Act of 1991, and discrimination under the Washington Law Against Discrimination. Additionally, because Mr. Wright's claims for a violation of the FLSA and for outrage fail to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court DISMISSES those two claims against all parties WITH LEAVE TO AMEND. In addition, the court will consider dismissing the claims

against Mr. Honick in the same manner as it dismissed the claims against Mr. Becker after receiving appropriate briefs in response to the ORDER TO SHOW CAUSE above.

Dated this 5th day of February, 2013.

JAMES L. ROBART
United States District Judge